UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

BAY LINEN, INC.,

    Plaintiff,

v.                                  Case No.  8:09-cv-1243-T-30MAP

TEAMSTERS LOCAL UNION NO. 79,

    Defendant.
_____/

## ORDER

THIS CAUSE comes before the Court upon Plaintiff Bay Linen, Inc.'s Motion to Vacate the Arbitration Award (Dkt. 1), Defendant Teamsters Local Union No. 79's Memorandum in Opposition (Dkt. 9), Defendant's Cross Motion for Enforcement of Labor Arbitration Award (Dkt. 8), and Plaintiff's Response to the Cross-Motion (Dkt. 10).  A hearing was held on the motions on February 24, 2010.  Upon consideration, the Court concludes that the Motion to Vacate the Arbitration Award should be denied and the Cross-Motion to Enforce the Arbitration Award should be granted.

## Background

Plaintiff Bay Linen, Inc. ("Bay Linen") provides laundry services to area hospitals. Bay Linen and Defendant Teamsters Local Union No. 79 ("Teamsters") are parties to a collective bargaining agreement ("the CBA").  The CBA establishes the Teamsters as the sole representative of Bay Linen workers who are included in the bargaining unit.  The bargaining unit, as certified by the United States National Labor Relations Board ("NLRB"),

is comprised of "all full-time and regular part-time drivers and dock workers employed by the Employer [Bay Linen] at its Clearwater (Largo), Florida facility; excluding all other employees, guards, and supervisors as defined in the Act." (Dkt. 1, ¶ 7).

The relevant portions of the CBA are as follows:

## ARTICLE 1
### Recognition and Bargaining Unit Work

<u>Section 1</u> - The Employer recognizes the Union as the exclusive representative for the purpose of collective bargaining with respect to wages, hours, and terms and conditions of employment for all employees within the bargaining unit description in NLRB case number 12-RC-8594.

Drivers working on a "temp-to-perm" status employed directly by an agency as part of the Company's recruitment practices shall be included in the bargaining unit. A "temp-to-perm" driver is defined as an agency employee filling a vacant position. The Company shall promptly notify the Union upon the start of a "temp-to-perm" employee's status. Notwithstanding anything to the contrary herein, a "temp-to-perm" employee shall be probationary and shall not be covered by the grievance or arbitration procedures herein, nor covered by the economic provisions of this Agreement, until the driver achieves permanent status by completing the hours required by the agency or the equivalent of four (4) months work time, whichever is shorter. Upon achieving permanent status, the employee shall be considered non-probationary and will have a seniority date and be added to the Seniority List as of the first day of permanent status and will be covered by all provisions of this Agreement. The Company will promptly notify the Union of a "temp-to-perm" employee's achieving permanent status.

<u>Section 2</u> - It is agreed that supervisors and other non-bargaining unit *employees* will not perform bargaining unit work except:
> (A) When such is necessary for the purpose of instruction and/or training of personnel.
> (B) In case of emergency.
> (C) Minimal non-route deliveries by supervisors in vehicles other than Company trucks at levels comparable to that existing as of the date of execution of this Agreement.
> (D) Temporary drivers from agency to fill-in for drivers, provided the Company will offer the work to drivers who have expressed an interest in the extra work by signing a bid sheet for the work on their days off. The bid sheet will be posted and remain in effect until there are any additions or deletions to the list, at which time a new list will be posted. The employee

called and who accepts the work will report as soon as possible but not later than one (1) hour within being called to report to work. Nothing herein shall entitle any employee to any "on-call pay" of any nature.

*****

# ARTICLE 5
## Grievance Procedure

**Section 1 – Definitions**
(A) A "grievance" is defined as a dispute involving the interpretation or application of the specific provisions of this Agreement, except as exclusions are noted in other articles of this Agreement.

*****

**Section 2 – Procedures**

*****

(3) Arbitration - . . .
The arbitrator shall have the authority to apply the terms of [t]his Agreement and to render a decision on any grievance coming before the arbitrator, but shall not have the authority to amend or modify this Agreement.

*****

# ARTICLE 9
## No Individual Agreements

The Company agrees not to enter into any agreement or contracts with its employees, individually or collectively, which in any way conflicts with the terms and provisions of this Agreement.

# ARTICLE 10
## Seniority and Layoff

Section 1 – Seniority, as measured by length of continuous service with the Company, shall prevail as spelled out in the Agreement, at all times. Seniority shall be gained on the $61_{st}$ calendar day and the employee shall be placed on the Seniority List using the first day worked as the seniority date.

# ARTICLE 11
## Management Rights

Except as expressly limited by any provision of this Agreement, the Employer reserves and retains exclusively all of its normal and inherent rights with respect to the management of its operations, whether exercised or not, including but not limited to, its rights to . . . subcontract or lease all or part of its functions . . . as the Employer may determine to be necessary to the orderly and efficient operation of its various operations, functions, and services.

# ARTICLE 15
## Probationary Period

Section 1 - A new employee shall work under the provisions of this Agreement, but shall be employed on a sixty (60) calendar-day trial basis during which period the

employee may be discharged for any reason without further recourse, provided, however that [Bay Linen] may not discharge or discipline for the purpose of discriminating against Union members. During the probationary period, the employee shall not have access to the grievance and arbitration procedures herein.

*****

## ARTICLE 19
### Entire Agreement

This Agreement, upon ratification, supersedes and cancels all prior agreements, whether written or oral, unless expressly stated to the contrary herein, and constitutes the complete and entire agreement between the parties. The parties acknowledge that during the negotiations which resulted in this Agreement, each had the unlimited right and opportunity to make demands and proposals with respect to any subject or matter not removed by law from the area of collective bargaining, and that the understanding and agreements arrived at by the parties after the exercise of that right and opportunity are set forth in this Agreement.

The company employs people in various positions, including drivers, production workers, and dock workers. Many workers are supplied by an outside temporary help agency. Dockworkers who have been supplied by the temporary agency are offered permanent employment with Bay Linen upon the completion of a probationary period of 60 days. Some dockworkers accept permanent employment, some do not. Workers who accept permanent employment became part of the bargaining unit. Bay Linen has allowed those workers who do not accept permanent employment to continue working and Bay Linen has treated them as subcontractors.

On July 29, 2008, the Teamsters filed a grievance alleging that Bay Linen violated Article 1, Section 2 of the CBA by using temporary agency workers to perform bargaining unit work on the dock. The grievance requested that Bay Linen include all workers performing work on the dock in the bargaining unit. On December 18, 2008, the grievance was submitted to arbitration. The parties were unable to frame the issue, so the arbitrator

formulated it to be: "Did [Bay Linen] violate the provision of the parties' Collective Bargaining Agreement in its placement of temporary agency employees on dock work and, if so, what shall be the remedy?"

In his Report and Decision, the arbitrator found that the temporary agency dockworkers were not subcontractors. Rather, they were "joint employees" of both the temporary agency and Bay Linen. By allowing these temporary workers to continue as dockworkers, Bay Linen set up a parallel, non-bargaining dockworker unit, which circumvented Article 9 of the CBA. The CBA did not contemplate Bay Linen's permanent use of the temporary agency dockworkers. The arbitrator ordered that the temporary workers must either be included in the bargaining unit or be removed from unit work.

Subsequently, Bay Linen issued a request for reconsideration and clarification to the arbitrator. Bay Linen argued that if the temporary agency workers are employees of Bay Linen, as the arbitrator found, then those workers are automatically included in the bargaining unit, whether or not they accept permanent employment with Bay Linen. Therefore, they cannot be removed from bargaining unit work. In relevant part, the arbitrator confirmed his award, stating that the decision does not direct the removal of bargaining unit employees. Only those who have exceeded the probationary period and have refused permanent employment in the dockworker bargaining unit must be removed from bargaining unit work or be treated as bargaining unit employees.

## Scope of Review

I. **Federal Arbitration Act**

Judicial review of commercial arbitration awards is narrowly limited under the Federal Arbitration Act. See 9 U.S.C. §10-11. The FAA presumes the confirmation of arbitration awards. See Davis v. Prudential Sec., Inc., 59 F.3d 1186, 1190 (11th Cir. 1995); Lifecare Int'l, Inc v. CD Med., Inc., 68 F.3d 429, 433 (11th Cir. 1995). Federal courts should defer to the arbitrator's decision whenever possible. Robbins v. Day, 954 F.2d 679, 682 (11th Cir. 1992). Pursuant to 9 U.S.C. §10, in reviewing an arbitration decision, the court is limited to four narrow questions: Whether (1) the decision is the result of fraud; (2) there is evidence of bias on the part of the arbitrators; (3) the arbitrator was guilty of misconduct; and (4) the arbitrator exceeded his powers. See B.L. Harbert Intern., LLC v. Hercules Steel Co., 441 F.3d 905, 910 (11th Cir. 2006); see also J.A. Jones Construction Company v. Flakt, Inc., 731 F.Supp. 1061, 1063 (N.D. Ga. 1990). Courts are careful not to exceed this limited scope of review in order to preserve the efficiency and reliability of arbitration proceedings. B.L. Harbert at 910.

In addition to these four statutory grounds for vacatur, the Eleventh Circuit has also recognize three non-statutory grounds. An award may be vacated if it is arbitrary and

capricious,[1] if the enforcement of the award is contrary to public policy,[2] or if the award was made in manifest disregard for the law.[3]

## II. **Labor Management Relations Act §301**

Review under the Labor Management Relations Act ("LMRA") §301, 29 U.S.C. §185, is similarly narrow. Review "is limited to a determination of whether an award is irrational, whether it fails to draw its essence from the collective bargaining agreement or whether it exceeds the scope of the arbitrator's authority." Osram Sylvania, Inc. v. Teamsters Local Union 528, 87 F.3d 1261, 1263 (11th Cir. Ga. 1996) (citing Butterkrust Bakeries v. BCTW Local 361, 726 F.2d 698, 699 (11th Cir.1984)). A court may not reject findings of fact made by an arbitrator or an arbitrator's interpretation of the contract simply because the court disagrees. United Paperworkers Int'l Union v. Misco, Inc., 484 U.S. 29, 38 (U.S. 1987). An arbitrator's interpretation is confined to a determination of the terms of the agreement. Id. But as long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, that a court is convinced he committed serious error does not suffice to overturn his decision. Id.

## **Discussion**

Bay Linen does not challenge the arbitrator's decision that the temporary agency workers are employees of Bay Linen and seeks to vacate only the remedy portion of the

---

[1] Ainsworth v. Skurnick, 960 F.2d 939, 941 (11th Cir. 1992).

[2] Delta Air Lines, Inc. v. Air Line Pilots Ass'n, Int'l, 861 F.2d 665, 671 (11th Cir. 1988).

[3] Montes v. Shearson Lehman Bros., Inc., 128 F.3d 1456, 1461 (11th Cir. 1997).

award arguing that it does not draw its essence from the CBA. As in its request for reconsideration and clarification from the arbitrator, Bay Linen argues that the Arbitrator's characterization of the agency dockworkers as employees renders them part of the bargaining unit under the express terms of the CBA. And if these workers are already part of the bargaining unit, there is no contractual basis to remove them from dock work or from the unit.

In interpreting the CBA, the arbitrator found those workers who were jointly employed by Bay Linen and the temporary agency were not being treated by Bay Linen as part of the bargaining unit. It is clear from the arbitrator's report and decision, that the arbitrator considered the language of the CBA in deciding they must be treated as part of the bargaining unit. These joint employees were treated as non-bargaining unit employees and by allowing them to continue doing dock work, Bay Linen is in violation of Article 1, Section 2 of the CBA.

In addition, Article 9 of the CBA recognizes the case law that prohibits an employer from entering into any agreement with its employees that would in any way conflict with the terms of the CBA. See J.I. Case v. NLRB, 321 U.S. 332 (1944). Generally, temporary agency employees may join a bargaining unit. Huck Store Fixture Co. v. NLRB, 327 F.3d 528, 537 (7th Cir. 2003). However, their inclusion must be contemplated by the CBA in order to avoid potential conflict. Otherwise, the employer would be direct dealing with individual employees in a way that could allow individual employees to receive better benefits than those in the bargaining unit. J.I. Case, 321 U.S. at 338.

Here, the CBA did not contemplate the temporary dock workers be included in the bargaining unit. The arbitrator appropriately found that Bay Linen's dealings with the temporary workers, via the temporary agency, violate the rule prohibiting direct dealing with temporary workers in circumvention of the CBA. This finding does draw its essence from the CBA.

The arbitrator's remedy to remove the non-bargaining unit employees from bargaining unit work is consistent with his interpretation of the CBA.

It is therefore ORDERED AND ADJUDGED that:

1. Plaintiff Bay Linen, Inc.'s Motion to Vacate the Arbitration Award (Dkt. 1) is **DENIED**.

2. Defendant Teamsters Local Union No. 79's Cross Motion for Enforcement of Labor Arbitration Award (Dkt. 8) is **GRANTED**.

3. The Clerk is directed to enter judgment in favor of Defendant.

4. Any other pending motions are denied as moot.

5. The Clerk is directed to close this case.

**DONE** and **ORDERED** in Tampa, Florida on February 25, 2010.

JAMES S. MOODY, JR.
UNITED STATES DISTRICT JUDGE

**Copies furnished to:**
Counsel/Parties of Record

S:\Odd\2009\09-cv-1243.vacate arbitration award.frm